# CHARLESTON.

UNITED STATES COAL & COKE COMPANY *v.* S. W. CECIL *et al.*

(No. 6777)

Submitted October 14, 1930. Decided November 12, 1930.

*Wade H. Bronson, John S. Draper* and *John W. B. Deeds,* for plaintiffs in error.

*Blue, Dayton & Campbell, Arthur S. Dayton,* and *Goody-koontz & Slaven,* for defendants, in error.

MAXWELL, JUDGE:

This action of ejectment involves only minerals. In the trial court a directed verdict was returned for the plaintiff for the possession in fee simple of the minerals described in the declaration, except two small parcels disclaimed by defendants. The defendants obtained this writ of error to the judgment entered upon the verdict.

The controversy centers closely around the following language appearing in a deed of Joseph Hatfield and wife to Henry R. Phillips, Trustee, October 15, 1889: "Witnesseth: That for and in consideration of the sum of Eighteen Hundred Dollars paid in hand the receipt whereof is hereby acknowledged, the said parties of the first part do grant unto the party of the second part with covenants of General Warranty the following described property, to-wit: All the coal gases salt water, oil and minerals of every description in upon and under my farm or tract of land situated in the County of Logan, State of West Virginia, on the waters of Left Fork of Ben Creek, containing one thousand and seven hundred acres and bounded as follows." Surveys predicated upon the detailed description by metes and bounds which follows in the deed immediately after the above quoted language disclose that said metes and bounds do not include approximately fifty acres of the Joseph Hatfield farm, which fifty acres lie on the Right Fork of Ben Creek beyond a certain ridge which extends through the farm. It is the minerals underlying this last mentioned portion of the Joseph Hatfield farm that are involved in this action.

Joseph Hatfield died March 9, 1893, survived by Sarah D. Hatfield, widow, and Nancy Hatfield Rutherford, his only child. August 10, 1893, Sarah D. Hatfield and Nancy Hatfield Rutherford and her husband executed to one A. M. Toler a deed for the said last mentioned portion of the Joseph Hatfield farm and embracing the minerals herein in controversy. The said deed contains this recital: "It being the same tract of land sold by Joseph Hatfield in his lifetime to the said A. M. Toler who never has received a conveyance therefor, and the said grantors herein being the only heirs at law of the decedent, Joseph Hatfield." Whether Joseph Hatfield undertook to sell to A. M. Toler the said land, including minerals, or only the surface, we do not know. But whatever may have been the nature of that sale, the evidence shows that it was made subsequent to the sale and conveyance to Phillips, Trustee. Plaintiff claims under the Phillips, Trustee, deed. The defendants claim claim under the Toler deed.

The ultimate basis of construction of deeds is the intent of the parties as disclosed by the language used in the deed, and in determining such intention "the whole of the deed and all its parts should be considered together." *McDougal* v. *Musgrave*, 46 W. Va. 509; *Blake* v. *Hedrick*, 94 W. Va. 761. If it was the intent of the parties to the deed of 1889 that all of the minerals under the whole of the farm of Joseph Hatfield should pass to the grantee, the general description should obtain over the description by metes and bounds. This is the contention of the plaintiff, and it was sustained by the trial court. On the other hand, if it appears from the language of the whole deed that only the minerals underlying the area enclosed by the metes and bounds of the deed should pass, then the minerals underlying the above mentioned parcel on the right fork of Ben Creek beyond the ridge were not included in said deed, and the plaintiff is without basis of right for recovery thereof. This is the defendants' contention. Defendants urge that there is no conflict between the general and the particular description used in the deed. They say that the reference to the Left Fork of Ben Creek is meant to exclude the land on the Right Fork just as the description by metes and bounds excludes the land on the Right Fork.

The language of the deed must be interpreted in the light of the situation of the parties at the date of the deed. At the same time that he was acquiring title to the Hatfield coal, Phillips, Trustee, was acquiring the coal under the land adjoining the Hatfield farm. There is high improbability that Joseph Hatfield would have undertaken to exclude from the conveyance, otherwise than by specific and definite language in the deed, some fifty acres of deep coal, and other minerals, wholly surrounded by minerals passing at the time from this grantor and other grantors to the same grantee. This improbability is intensified by the fact that the coal and other minerals were then deemed of very little value as indicated by the recitals of the deed itself—$1,800 for supposedly 1,700 acres of minerals. There is strong significance in the language "*All* the coal gases salt water, oil and minerals of every description *in upon and under my farm.*" (Italics ours.) True, he says: "On the waters of *Left* Fork of Ben Creek." (Italics again ours.) But about ninety percentum of his farm was on the Left Fork, and he lived there. It is not at all strange that he should refer to his farm as situated on that fork. We think that the circuit court was plainly right in its analysis of this matter; namely, that Joseph Hatfield intended to convey to Phillips, Trustee, all of the minerals underlying his whole farm. No good purpose would be served by extended discussion of the many cases and authorities cited by able counsel on both sides of this controversy. The main proposition, however, impresses us as narrow and simple and controlled by settled, general, and well understood principles of construction heretofore recognized and applied by this Court. The principles applicable here are found lucidly set forth in the case of *Mylius* v. *Lumber Co.*, 69 W. Va. 346, 361:

"In cases of repugnance in description, when both apparently apply, that which is most certain prevails. When a deed contains two contradictory descriptions of the same premises, one of which is particular and definite, showing the precise location and bounds of the land, and the other general in its terms, the former controls, because that description which undertakes to set out the specific boundary is

more likely to have been carefully attended to by the parties and, therefore, to reflect their real intention, than the general one, but this principle is operative only in those cases in which either description may be taken without doing violence to the manifest intention of the parties. It does not apply when one of the descriptions is baldly false and must have been inserted by mistake. A description of a town lot by its number and the number of the block, followed by a description by metes and bounds, including only a part of it, carries the whole lot. *Rutherford* v. *Tracy*, 48 Mo. 325; *Masterson* v. *Munro*, 105 Cal. 431. A conveyance describing the land as the grantor's home farm, and then setting out a particular description of the parcel of which it is composed, but omitting several acres, passes the whole farm. *Andrews* v. *Pearson*, 68 Me. 19; *Marshall* v. *McLean*, 3 Ia. 363. A description of a lot by number will control a reference to adjacent streets. *Nash* v. *Railroad Co.*, 67 N. C. 413. See generally *Baxter* v. *Tanner*, 35 W. Va. 60; *Smith* v. *Chapman*, 10 Grat. 445; *Heaton* v. *Hodges*, 14 Me. 66, 30 Am. Dec. 731, and note; *Nash* v. *Railroad Co.*, 67 N. C. 413; Devlin on Deeds, secs. 1017-1020. This law fits this case exactly. The description by metes and bounds covers only part of the land, owned by the grantor, the general description covers all of it.''

The same principle is applied in *Adams* v. *Alkire*, 20 W. Va. 480, wherein at page 487, JUDGE SNYDER says: ''Upon these authorities and the reason of the rule, it seems to me, that the whole deed must be considered, and where a deed contains a general description of the land conveyed by it, which can be made certain by proof of the surrounding circumstances, or identified by reference to the land itself or other objects that, more or less distinctly, indicate or determine it, and the same deed also gives courses and distances of the land; such general description, if it satisfactorily appears from the deed itself, or any recital or writing referred to therein, that it was the intention of the grantor to convey the land thus generally described, will control, and the courses and distances,

in so far as they limit or differ from such general description, will be disregarded.''

The following excerpts of authority buttress our position. A grant made certain by general description will not be limited by particular description ''unless it can be clearly ascertained from all the words of the conveyance that such was the intention of the parties.'' 18 Corpus Juris, p. 284. ''In order for a general grant to be limited by a subsequent particular description such an intention must definitely appear from the terms of the particular description.'' Thompson on Real Property, sec. 3100. ''Very much depends upon the circumstances of the case and the nature of the descriptions used. If the general description is definite and certain, and is proved to be correct by reference to the land itself, or in any other way, or if in any way the intention of the parties appears to have been to convey the land thus generally described, the general description will prevail as against a description by courses and distances, so far as these descriptions differ.'' 1 Jones on Real Property, sec. 414. Liberal construction will obtain to sustain the intent. 18 Corpus Juris, p. 277; 8 Ruling Case Law, p. 1071. And, ''It is a general rule in the interpretation of deeds that in cases of doubt or ambiguity, they will be construed most strongly against the grantor and in favor of the grantee.'' Dig. of Va. and W. Va. Reports (1929) Vol. 3, p. 550, and cases cited.

We affirm the judgment.

*Affirmed.*